**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In Re: ) | Chapter 11 | |
| ) | | |
| The Kirk Corporation, ) | | |
| ) | Case No. 09 B 17236 | |
| Debtor. ) | (Jointly Administered) | |
| _____) | | |
| ) | Judge Carol A. Doyle | |
| Cole Taylor Bank, ) | | |
| ) | | |
| Plaintiffs, ) | | |
| ) | | |
| v. ) | Adversary No. 09 A 00788 | |
| ) | | |
| The Kirk Corporation, et al., ) | | |
| ) | | |
| Defendants. ) | | |

**MEMORANDUM OPINION**

Cole Taylor Bank has moved for an award of attorneys' fees from funds deposited with the court in this interpleader action. Cole Taylor was the escrow agent under an escrow agreement entered into by the debtor, Kirk Corporation, and 22 individuals who are participants in the Kirk Corporation Employee Stock Ownership Plan (the "ESOP"). After Kirk filed for bankruptcy, Cole Taylor drew down on a letter of credit and eventually filed this interpleader action asking the court to determine how to divide the funds deposited with the court. Cole Taylor now seeks payment of its attorneys' fees from these deposited funds. The court has discretion to permit payment of reasonable attorneys' fees to an innocent stakeholder who did not expect to be involved in an interpleader dispute in the ordinary course of its business. Because

Cole Taylor is such an innocent stakeholder, the court will allow a portion of Cole Taylor's attorneys' fees and expenses to be paid from the funds deposited with the court.

Cole Taylor also requests, in the alternative, that its fees and costs be an allowed administrative expense of the bankruptcy estate. Kirk's bankruptcy case was converted from chapter 11 to chapter 7, and the chapter 7 trustee objects to allowing Cole Taylor's fees as an administrative expense because the Cole Taylor didn't enter into any transaction with the post-petition debtor, Kirk didn't do anything to induce Cole Taylor to undertake any action, and Cole Taylor's actions provided no benefit to the estate. The court agrees and concludes that Cole Taylor is not entitled to an administrative claim for its attorneys' fees and expenses incurred in connection with the escrow agreement and filing this interpleader action.

**I.    Background**

Kirk, Cole Taylor and the ESOP participants entered into an escrow agreement to provide security to the ESOP participants for payments owed by Kirk under certain notes issued in connection with the ESOP. The escrow agreement required Kirk to cause an irrevocable standby letter of credit to be issued naming Cole Taylor as the beneficiary to secure payment of the notes. If Kirk defaulted on payment on the notes, Cole Taylor would drawn on the letter of credit and distribute funds to the noteholders - the ESOP participants who are the individual defendants in this action.

Kirk defaulted on the notes and filed a chapter 11 bankruptcy petition in May 2009. In July 2009, Cole Taylor drew on a letter of credit posted by Kirk and was paid approximately $843,000. The amount owed to noteholders is approximately $1.7 million, almost twice as high

as the value of the letter of credit, because Kirk failed to comply with the provision in the agreement requiring it to provide security for the full amount owed under all notes covered by the escrow agreement.  Kirk obtained a standby letter of credit in the full amount owed to the initial group of participants in the ESOP but, as other participants were added later, Kirk did not increase the amount of the letter of credit.  The escrow agreement does not provide for how Cole Taylor should divide the funds if there are insufficient funds to pay all claims of the noteholders in full.

In August 2009, while the bankruptcy case was still in chapter 11, Cole Taylor filed a motion with the bankruptcy court seeking direction regarding how to distribute the escrow funds.  The court (through J. Wedoff, who was handling the case at the time), suggested that Cole Taylor file an interpleader action instead.  Cole Taylor then filed this interpleader action and deposited the escrowed funds with the court in March 2010.  Cole Taylor now seeks an order approving its request for payment of its attorneys' fees and expenses incurred in connection with the escrow agreement and this interpleader action from the funds deposited with the court.  In the alternative, Cole Taylor requests that its attorneys' fees and expenses be allowed as an administrative expense in the bankruptcy case.

The individual defendants, participants in the ESOP, oppose the payment from the deposited funds on a number of grounds, including that state law governs and does not permit payment of attorneys fees from the fund, that Cole Taylor isn't an innocent stakeholder, that filing an interpleader action is part of the ordinary course of Cole Taylor's business as an escrow agent, and that the escrow agreement requires Kirk to indemnify Cole Taylor for its attorneys' fees and expenses.   None of these arguments is persuasive.

3

## II.   State or Federal Law

One group of participants first argues that whether attorneys' fees are available in an interpleader action is determined by state law under *Erie R.R. Co. v. Tompkins,* 304 U.S. 64 (1938), and that Illinois law does not permit such payment, *citing Aetna Life Ins. Co. v. Johnson*, 206 F. Supp 63 (N.D. Ill 1962).   Many courts in this circuit have since concluded that *Erie* does not apply and that federal courts have discretion to award attorneys' fees in interpleader actions. *E.g., Security First Network Bank v. C.A.P.S., Inc.*, 2002 WL 485352 (N.D. Ill. March 9, 2002); *Minnesota Mutual Life Ins. Co. v. Gustafson*, 415 F. Supp. 615 (N.D. Ill. 1976).   *See also Mahl v. Merrill Lynch*, 550 F.3d 659, 667 (7th Cir. 2008) (applying federal law in determining whether attorneys' fees should be awarded in an interpleader action).   The court agrees with the *Security First* and *Minnesota Mutual* courts that federal law applies and gives federal courts discretion to award attorneys' fees to innocent stakeholders who file interpleader actions.

## III.   Awarding Attorneys' Fees From Deposited Funds

Federal courts usually award attorneys' fees in interpleader actions to a disinterested stakeholder who deposits the disputed funds with the court and seeks a minimal amount of fees. *Minnesota Mut. Life Ins.*, 415 F. Supp. at 617 (citations omitted).  There are generally three rationales for such an award.   First, when the conflicting claims are not the fault of the stakeholder, it should not have to pay fees to guard itself against multiple lawsuits.  *Id.*   Second, by promptly initiating an interpleader action, the stakeholder assists judicial economy by bringing all claimants into one forum to resolve their claims and allowing the prevailing claimants to

obtain the funds without having to execute on a judgment. *Id.* Finally, the award of attorneys' fees is usually nominal and of little consequence to the fund. *Id*.

Some courts have awarded only a portion of the fees sought because the stakeholder also benefits from the interpleader action because it avoids having to defend a multiplicity of suits in different jurisdictions. *Id.* at 618; *Security First v. C.A.P.S.*, 2002 WL 485352 at *11, *Manufacturers Life Ins. Co. v. Johnson,* 385 F. Supp. 852, 854 (E.D. Va. 1974). Other courts have refused to award any fees when the dispute is part of the ordinary business of the stakeholder. *Minnesota Mut. Life Ins.*, 415 F. Supp. at 619. These courts have denied attorneys' fees to plaintiffs whose business involves resolving disputes to the funds, such as insurance companies or banks acting as executors of trusts or estates. *Id.*; *See also Sternitzke v. Pruco Life Ins. Co.,* 2003 WL 21153390 (7th Cir. May 7, 2003) (affirming award of attorneys' fees when not in normal course of interpleader plaintiff's business). The rationale for the refusal to grant fees is that the banks and insurance companies know there is a reasonable probability that various claimants will contest the ownership of a particular asset and should expect to incur fees in connection with these disputes. *E.g., Chase Manhattan Bank v. Mandalay Shores Coop. Hous. Ass'n*, 21 F.3d 380, 383 (11th Cir. 1994). When banks are acting merely as a depository, however, there is little expectation that a dispute as to ownership will arise. In such cases, an award of fees to the bank may be appropriate. *Id*.

### A.    Innocent Stakeholder

The participants next argue that Cole Taylor is not in fact an innocent stakeholder but instead had an affirmative duty to make sure that Kirk obtained letters of credit totaling the full amount outstanding under all notes at any given time. They assert that Cole Taylor is

responsible for the lack of sufficient funds to pay all noteholders in full and, therefore, is not an merely an innocent stakeholder.

It is undisputed that Cole Taylor's involvement is based solely on the escrow agreement. The agreement requires Kirk to obtain an irrevocable standby letter of credit naming Cole Taylor as the beneficiary in the amount of the total amount of notes outstanding. Agmt. Par. 1. Kirk is also required to notify Cole Taylor annually in writing of the balance due on all notes then outstanding and the amount of the letter of credit. *Id*. The agreement defines various events of default, including any failure by Kirk to make timely payment under a note. Agmt. Par. 2(a). If Kirk fails to make a payment on a note, the participant must notify Cole Taylor, which is then required to draw down on the letter of credit to the extent of Kirk's default and make the payment owed to the participant. The agreement imposes no other obligations on Cole Taylor and specifically provides that Cole Taylor "undertakes to perform only such duties as are expressly set forth herein and no implied duties or obligations shall be read into this Escrow Agreement against the Escrow Agent." Agmt. Par. 7.

The participants argue that Cole Taylor owed a duty to make sure there was enough security for all the outstanding notes but they point to no provision in the agreement imposing such a duty. Paragraph 1 of the agreement requires *Kirk* to obtain the letters of credit in a sufficient amount and requires *Kirk* to notify Cole Taylor each year of the amount of outstanding notes and the amount of its letter of credit. The agreement does not impose an obligation on Cole Taylor to do anything with this information. The only way Cole Taylor could be responsible for Kirk's failure to increase the amount of the letter of credit would be if such a duty were inferred from Kirk's obligation to provide notice to Cole Taylor. Since the agreement

6

specifically provides that no additional duties or obligations shall be implied, however, no such inference can fairly be made from the agreement. If the parties intended to require Cole Taylor to insure that the amount of the letter of credit was sufficient to pay all outstanding notes in full, they would have expressly imposed such an obligation. The court therefore concludes that Cole Taylor had no such duty and is an innocent stakeholder in this matter.

### B.     Ordinary Course of Business

The participants also argue that Cole Taylor is not entitled to its attorneys' fees from the deposited funds because the interpleader claim arises out of the ordinary course of Cole Taylor's business. They assert that Cole Taylor was acting more like an insurer or trustee of a trust than a mere depository and that Cole Taylor should have anticipated that disputes would arise from the escrow agreement. The participants rely only on the annual notice provision in Paragraph 1 discussed above and Cole Taylor's obligation to distribute escrow funds if Kirk defaults on a payment to support this argument. Those provisions do not demonstrate that Cole Taylor took on the obligation to decide between competing claims as an insurance company, a surety, or an executor of an estate would expect to do in their ordinary course of business. Instead, under the escrow agreement, Cole Taylor merely agreed to draw down on a letter of credit and make payments that were overdue. The agreement contemplated that there would be no shortfall and therefore no reason to decide between claimants. Cole Taylor's role was that of a mere depository rather than an interpleader plaintiff seeking to foist on the courts a duty it should have expected to perform as a part of its business.

The participants also assert that Cole Taylor earned substantial fees for acting as an escrow agent, but Cole Taylor asserts that the annual fee was approximately $1500 per year,

7

hardly a large sum that would reflect that it anticipated that it would decide disputes between claimants based on insufficient funds in the escrow account.

    C. **Indemnification and Escrow Fees Provisions**

The participants next argue that Cole Taylor should not be paid its attorneys' fees from the deposited funds because the agreement requires Kirk to indemnify Cole Taylor for "all claims, liabilities, losses, actions, suits or proceedings ... or any other expenses, including costs and attorneys' fees" that it incurs by reason of acting as escrow agent under the agreement. Agmt. Par. 9. They argue that, under this provision, any payment of attorneys' fees should come from Kirk, not the escrow funds. They acknowledge that the agreement also provides that Cole Taylor is entitled to its "customary fees for acting as Escrow Agent ... and for reimbursement of expenses incurred in acting as Escrow Agent hereunder." Agmt. Par. 6. They argue that this provision does not expressly permit attorneys' fees to be paid from the deposited funds.

Although the participants are correct that Paragraph 6 does not expressly provide that the funds should come from the deposited funds, it also does not prohibit the use of those funds to pay Cole Taylor's fees. In addition, while Paragraph 9 requires Kirk to indemnify Cole Taylor for any attorneys' fees and expenses it incurs, it also does not prohibit the use of the deposited funds to pay Cole Taylor's attorneys' fees. Neither provision anticipates Kirk's inability to pay escrow fees and any additional costs covered in the indemnification provision. It is clear from both provisions, however, that the parties did not expect Cole Taylor to absorb its own attorneys' fees and expenses incurred in connection with the agreement. And, as discussed below, it is very unlikely that Cole Taylor will be paid from the Kirk bankruptcy estate via the escrow fees clause or the indemnification clause for its attorneys' fees incurred in connection with the interpleader

action.[1]   Because Paragraphs 6 and 9 do not prohibit are the use of the deposited funds to pay Cole Taylor's fees and expenses, they do not prevent the court from exercising its discretion to allow Cole Taylor's attorneys' fees from the deposited funds.

### D. Exercise of Discretion

Since Cole Taylor is an innocent stakeholder that did not expect to be resolving disputes between competing claimants, there is no reason to deviate from the usual federal rule of allowing reasonable attorneys' fees to be paid from the interpleader funds to the extent the fees sought are consistent with the principal justifications for allowing fees discussed above.   Here, Cole Taylor's filing of the interpleader action benefitted the participants by bringing them all into one forum for the expeditious resolution of the issues.   Cole Taylor also itself benefits from the interpleader action, however, because it avoids having to defend multiple lawsuits and is affirmatively seeking a discharge and injunction barring any actions by the participants arising from the escrow agreement, including the shortfall in escrow funds.  The court finds that it is appropriate to award reasonable fees in connection with the filing of the interpleader action itself from the escrow funds, but not to grant fees for efforts that benefit principally Cole Taylor, including the motion for a discharge and injunction.

Cole Taylor seeks approximately $70,000 in attorneys fees (plus approximately $2,000 in expenses) for work that includes advising Cole Taylor about how the bankruptcy filing impacts the escrow agreement, filing the "motion for direction" with the bankruptcy court, drafting and

---

[1] Cole Taylor is not entitled to an administrative claim for its attorneys' fees and expenses, as discussed below,  and it is highly unlikely that an unsecured claim based on the indemnification provision will be paid by the estate because of the huge amount of secured debt that is unlikely to be paid in full.

serving the interpleader complaint, hearings and answers regarding the complaint, negotiating with noteholders, filing a brief on jurisdiction after the court raised sua sponte the issue of its jurisdiction, and filing a motion to deposit funds and for discharge, filing this motion for attorneys fees, and filing another motion for a discharge.

The court finds that the following categories of fees benefitted all the participants and may be paid from the escrow funds: preparing the interpleader complaint ($7,714), attending hearings and reviewing answers relating to the complaint ($7,902), and the brief on jurisdiction ($16,711). The fees incurred for filing the complaint would likely have been incurred by the participants if Cole Taylor had not filed the complaint. The amount of fees for filing the interpleader complaint are reasonable and relatively small in amount, consistent with the general expectation that attorneys' fees for filing an interpleader complaint should be "minimal." The fees for attending hearings and reviewing answers were necessarily incurred as part of the interpleader process until Cole Taylor could deposit the funds. The brief on jurisdiction was required by the court to address bankruptcy jurisdiction, which is not a simple issue. No participant contended that the court does not have jurisdiction, so presumably they all sought a resolution through the bankruptcy court. All participants benefit from the bankruptcy court's nationwide jurisdiction. There is no doubt that resolution of the issues in one forum will result in the lowest costs for all parties. The jurisdictional brief was necessary for the case to remain in bankruptcy court and therefore, in effect, benefitted all participants. The attorneys' fees requested in these categories total $32,327.

The following categories of work benefitted primarily Cole Taylor and should not be paid from the escrow funds: advising Cole Taylor on the impact of the bankruptcy proceeding,

($9,135), negotiating with noteholders ($3,528), motion to deposit funds and for discharge ($17,130), the "motion for direction" ($9,656), and the discharge motion and fees motion ($3,994 plus additional fees incurred after the motion was filed). Advising Cole Taylor on the bankruptcy proceeding generally did not directly benefit the participants. The motion to deposit funds and for a discharge and the motions for fees and a discharge were filed primarily for the benefit of Cole Taylor, since there was no controversy about the deposit of funds, only the discharge issue. The motion seeking direction might have benefitted the noteholders if it resulted in a resolution of the issue but it seems primarily intended to take the issue out of Cole Taylor's hands and thus would primarily benefit Cole Taylor. While the court does not doubt Cole Taylor's good faith in filing the motion for direction, it doesn't appear to present a viable basis for resolving the dispute and the court will exercise its discretion not to impose this $9,600 cost (for a 5-page motion with no legal authority or real substance) on the participants. Attorneys' fees requested in these categories total $43,443.

The court is mindful that the parties were directed to brief only the issue of whether Cole Taylor was entitled to be paid any attorneys' fees from the deposited funds and that, if the court decided that payment of attorneys' fees was appropriate in any amount, it would give the participants an opportunity to object regarding the amount of fees sought. The participants may file additional objections based on the amount of fees in any category. If they choose to do so, however, Cole Taylor may argue in reply that particular line items in the excluded categories are

more fairly included in one of the permitted categories, in addition to replying to the arguments raised by the participants regarding particular objections in the permitted categories.[2]

If no further objections are filed by the participants, the court will enter a final order granting fees in the amount of $32,327 and expenses of $986 to be paid from the funds deposited with the court. The court will deny the request for the following expenses: Westlaw and Lexis charges totaling $993. In this electronic age, these costs are part of the overhead of any law firm.

### IV.   Cole Taylor's Request for Allowance of Administrative Expense

In the alternative, Cole Taylor requests that its attorneys fees' and expenses be allowed as an administrative expense in Kirk's bankruptcy case. It asserts that it incurred these expenses "post-petition out of an agreement with" Kirk, and that the fees and costs benefitted the operation of Kirk's business by helping wind down one of Kirk's employee benefit programs. Chapter 7 trustee Richard Fogel objects to Cole Taylor's request on the basis that Cole Taylor did not do business with the post-petition debtor, the debtor did nothing to induce Cole Taylor's performance, and Cole Taylor's actions provided no real benefit to the estate.

Section 503 of the Bankruptcy Code allows for administrative expense priority for the payment of actual, necessary costs and expenses of preserving the bankruptcy estate, including wages, salaries, or commissions for services rendered after the commencement of the case. 11 U.S.C. § 503(b)(1)(A). It gives priority to parties who supply goods or services to a debtor in

---

[2]Based on a review of the time entries in each of the categories into which Cole Taylor divided its work, any reduction in fees based on further objections may well be offset by work in the excluded categories that may be more properly included in the permitted categories.

possession as an incentive to do business with a debtor-in-possession. *In re Jartran, Inc.*, 732 F.2d 584, 586 (7th Cir. 1984).

The Seventh Circuit has adopted a strict two part test for determining whether a particular debt should be afforded administrative priority: (1) the debt must arise from a transaction with the trustee, and (2) the debt must be beneficial to the bankruptcy estate. *Jartran*, 732 F.2d at 586-87, *citing Mammoth Mart*, 536 F.2d 950, 954 (1st Cir. 1976). To satisfy the first prong of this test, the creditor must enter into a transaction with the post-petition debtor or the debtor must have induced the creditor's performance. *Jartran*, 732 F.2d at 588. The debt may not merely arise out of commitments made before the debtor-in-possession came into existence. *Id.* The second prong requires an actual and necessary benefit to the bankruptcy estate. *Id.* at 587.

The trustee asserts that Cole Taylor's request for administrative expense priority fails both parts of the *Jartran* test because the escrow agreement was a pre-petition agreement and Cole Taylor's actions generating the fees and expenses conferred no benefit on the Kirk estate. Cole Taylor counters that the trustee's reading of the *Jartran* test is too narrow because a debtor's post-petition acceptance of performance of a pre-petition contract can satisfy the test that the creditor enter into a transaction with the post-petition debtor. Cole Taylor also responds that the Kirk estate benefitted because Cole Taylor's helped to wind down Kirk's employee benefits program.

The court agrees with the trustee that Cole Taylor does not meet either of the *Jartran* requirements for an administrative expense claim. First, it did no business with the post-petition debtor and Kirk did nothing to induce Cole Taylor to perform after the bankruptcy petition was filed. Cole Taylor merely argues that it incurred the fees and costs post-petition, which is clearly

13

insufficient under *Jartran*. Cole Taylor also argues that it is sufficient for the debtor to have "accepted" performance post-petition, citing *In re Goody's Family Clothing, Inc.*, 401 B.R. 656 (D. Del. 2009). To the extent that *Goody* provides support for this proposition, it is inconsistent with *Jartran*, in which the creditor conferred a post-petition benefit on the debtor based on a pre-petition contract and was denied an administrative claim. In addition, even if the Seventh Circuit would expand its test to include a post-petition "acceptance of a benefit" as the test for a post-petition transaction with the debtor, Cole Taylor provided no basis for concluding that Kirk "accepted" any post-petition performance by Cole Taylor.

Cole Taylor also fails to meet the second part of the *Jartran* test - that it provided a benefit to the debtor post-petition. The deposited funds are not property of the estate and the resolution of the interpleader action does not provide a benefit to the estate because the total amount of funds to be distributed is already determined. While the interpleader action will decide which claimants will be paid and in what amount, and so will affect the amount of any remaining claim that each participant will have against the estate, the total amount of the estate's liability on the notes will remain unchanged. Cole Taylor therefore also fails to meet the second prong of the *Jartran* test.

## V.     Conclusion

Cole Taylor's motion for an award of attorneys' fees and expenses to be paid from the funds deposited with the court will be granted in part and denied in part in an order to be entered at a future date. The defendant participants may file (but are not required to file) additional objections to the fees in the permitted categories identified above by June 18, 2010. If any

additional objections are filed, Cole Taylor may file a reply addressing the issues discussed above by July 2, 2010. If a further objection is filed, this matter will be continued for further hearing on July 22, 2010. If no further objection is filed, the court will enter an order granting the motion in the amount of $33,313 and denying the remainder of the motion.

Dated:   June 7, 2010

ENTERED:

_____
Carol A. Doyle
United States Bankruptcy Judge