**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In Re: | ) | Chapter 7 |
| | ) | |
| The Kirk Corporation, | ) | |
| | ) | Case No. 09 B 17236 |
| Debtor. | ) | (Jointly Administered) |
| | ) | |
| | ) | Judge Carol A. Doyle |
| Cole Taylor Bank, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adversary No. 09 A 00788 |
| | ) | |
| The Kirk Corporation, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

This adversary proceeding involves claims by two groups of former employees seeking to recover funds formerly held by an escrow agent under an agreement to provide security for payments owed by the debtor, Kirk Corporation, to former employees for the purchase of stock distributed under the Kirk Employee Stock Option Plan ("ESOP"). The former employees filed cross-claims against Kirk alleging breach of fiduciary duty under ERISA for Kirk's admitted failure to provide sufficient funding under a letter of credit to satisfy all claims of the cross-plaintiffs. One group of cross-plaintiffs (Group A) also alleges that Kirk breached its fiduciary duty by allowing the later group of former employees (Group B) to sell their shares back to Kirk at inflated prices.

Kirk moved to dismiss the cross-claims on a number of grounds, including that the cross-plaintiffs have failed to allege sufficient facts to support their claims, that Kirk did not owe a fiduciary duty to provide adequate security for the installment notes it issued, and that the cross-plaintiffs cannot allege an injury to the plan as required to state a claim for breach of fiduciary duty under § 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2).  The motion will be granted with respect to both cross-complaints because the cross-plaintiffs cannot allege an injury to the plan as required for a claim under § 502(a)(2) of ERISA and Group A failed to allege sufficient facts to support its claim regarding the purchase price of stock for Group B.

I.   **Background**

The Kirk Corporation filed for relief under chapter 11 of the Bankruptcy Code in May 2009.  The case was converted to chapter 7 in October 2009.  Cole Taylor Bank filed this adversary proceeding in August 2009 to deal with funds it held as an escrow agent under an agreement entered among Kirk, Cole Taylor and the former participants in Kirk's ESOP.  Under the ESOP, employees accumulated shares of Kirk stock that were to be distributed to them when their employment with Kirk ended.  The ESOP gave participants the right to sell their shares back to Kirk (called a put option) and gave Kirk the right to pay cash for the shares or provide payments in installments over the course of five years.  If Kirk chose the installment plan, it was required to provide adequate security for the payments.

Kirk chose the installment approach for all of the individual defendants.  To comply with the adequate security requirement, Kirk entered into an escrow agreement with Cole Taylor.  Under the agreement, Cole Taylor would be made the beneficiary of an irrevocable standby letter

of credit and agreed to make payments to any participating former employee if Kirk failed to make payments on an installment note. Each former employee who invoked the put option was given an installment note from Kirk and a certificate of participation in the escrow agreement with Cole Taylor. Kirk obtained a letter of credit equal to the amount owed to the first group of employees who received distributions from the ESOP in 2005 and 2006. As more participants received their stock distributions from the ESOP over time, however, Kirk failed to increase the amount of the letter of credit. The result is that, by the time Cole Taylor was notified in July 2009 that Kirk had defaulted on its payments under the notes, the amount of the letter of credit was approximately $847,000 but the outstanding indebtedness on the notes was approximately $1.7 million.

When Cole Taylor received notice that Kirk had failed to make payments under the notes and had filed for bankruptcy, Cole Taylor drew down on the letter of credit and sought guidance from the bankruptcy court regarding how to distribute the funds among the claimants. The bankruptcy judge hearing the case at that time suggested that Cole Taylor file an interpleader action. Cole Taylor then filed this adversary proceeding naming Kirk and all the former employees who were participants in the escrow agreement as defendants. Cole Taylor has since deposited the escrow funds with the court.

The individual defendants are divided into two categories: the former employees whose employment with Kirk ended in 2005-2006, known as Group A, and the former employees whose employment ended after 2006, known as Group B. Certain Group A defendants (Elizabeth Mugnai, Lisa Schmuldt, Jeff Arnold, Mary Ann Gorog, and Chris Steponaitis) filed a cross-claim against Kirk alleging two breaches of fiduciary duty under the Employee Retirement

Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*. First, they allege that Kirk breached its fiduciary duty by failing to provide adequate security to cover all the amounts owed on the installment notes issued to former participants of the ESOP. Second, they allege that Kirk breached its fiduciary duty to them by valuing the stock purchased back from Group B under the put option at prices that were too high. Certain Group B defendants (Stacy Barham, Luis Encarnacion, Michele Blasco, John Matustik, Henry Thompson, Robin Straus, and Mark Rank) filed a cross-claim against Kirk that alleges only that Kirk breached its fiduciary duty by failing to provide adequate security for the installment notes.

Kirk filed a motion to dismiss both cross-claims on number of grounds. With regard to the claim made by both groups of cross-plaintiffs that Kirk breached its fiduciary duty by failing to provide adequate security for the notes, Kirk makes three principal arguments. First, it contends that the cross-plaintiffs failed to allege sufficient facts to satisfy Rule 8 of the Federal Rules of Civil Procedure. Second, Kirk argues that the cross-plaintiffs cannot state a claim for breach of fiduciary duty because the obligation to provide adequate security was not a fiduciary duty. Third, Kirk argues that the cross-plaintiffs fail to state a claim for breach of fiduciary duty because they cannot allege a loss to the plan as required under § 502(a)(2) of ERISA, 29 U.S.C. § 502(a)(2). With regard to the claim for breach of fiduciary duty based on the price at which Kirk bought stock back from Group B, Kirk argues that the Group A cross-plaintiffs failed to allege sufficient facts to satisfy Rule 8.

**II.     Jurisdiction**

The court has core jurisdiction over the cross-claims against Kirk under 28 U.S.C. § 157(b)(2)(B) because they are claims against the debtor.

**III.    Standard for Motion to Dismiss**

In ruling on a motion to dismiss under Rule 12(b)(6) of the Federal Rule of Civil Procedure, which applies to this adversary proceeding through Rule 7012 of the Federal Rules of Bankruptcy Procedure, the court must accept as true all facts alleged in the complaint and draw all reasonable inferences from those facts in favor of the plaintiff. *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 977-78 (7th Cir. 1999). Rule 8 of the Federal Rules of Civil Procedure generally requires the pleader to provide "a short and plain statement of the claim showing that the plaintiff is entitled to relief" that gives the defendant "fair notice of what the...claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although a complaint need not contain "detailed allegations," the plaintiff must provide the grounds for relief through "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555. Rather, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, No. 07-1015, 2009 WL 1361536, at *12 (May 18, 2009) (citing *Twombly,* 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 2009 WL 1361536, at *12 (citing *Twombly*, 550 U.S. at 556).

**IV.    Breach of Fiduciary Duty under § 502(a)(2) of ERISA**

Both cross-complaints allege that Kirk breached its fiduciary duty under ERISA. Section 409 of ERISA makes a fiduciary personally liable for breaches fiduciary duty. 29 U.S.C. § 1109(a). It provides that anyone who is a fiduciary under a plan who breaches any of his duties is personally liable to make good to the plan any losses to the plan resulting from the breach. *Id.* Section 502 of ERISA creates a private right of action for plan participants to enforce their rights under a plan and for breach of fiduciary duty. 29 U.S.C. § 1132(a).

Under § 3(21)(A) of ERISA, a person is a fiduciary with respect to a plan "to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation . . ., or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). There are two types of fiduciaries under ERISA: named and unnamed. 6-153 Labor and Employment Law § 153.02 (Lexis 2010). A "named" fiduciary, such as a plan administrator, trustee, or investment manager, is generally a fiduciary because of the individual's necessary exercise of discretionary authority or control in administering the plan or managing its assets. *Canada Life Assur. Co. v. Lebowitz*, 185 F.3d 231, 237 (4th Cir. 1999). Even if a party is not a named fiduciary, it may still be deemed a fiduciary under ERISA to the extent it exercises authority or control as set forth in §3(21)(A). Both named and unnamed fiduciaries owe a fiduciary duty, however, only with respect to those aspects of the plan over which they exercise such authority or control. *E.g., Sommers Drug Stores Employee Profit Sharing Trust v. Corrigan Enter., Inc.*, 883 F.2d 345, 352 (5th Cir. 1989).

Because a person who is a fiduciary regarding one aspect of a plan may not be a fiduciary regarding other aspects of a plan,  the threshold question when evaluating a claim for breach of fiduciary duty under ERISA is whether the defendant was acting as a fiduciary (ie, performing a fiduciary function) when taking the action that is the subject of the complaint.  *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000); *Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 471 (7th Cir. 2006).  Courts often refer to non-fiduciary functions as "settlor" functions as opposed to fiduciary functions.  Employers who are plan sponsors typically wear both hats:  one as a fiduciary in administering or managing the plan for the benefit of participants, and the other as an employer in performing settlor functions such as establishing, funding, amending, and terminating the trust.  *Hunter v. Caliber System, Inc.*, 220 F.3d 702, 718 (6th Cir. 2000).  *See also Johnson v. Georgia-Pacific Corp*., 19 F.3d 1184, 1188 (7th Cir. 1994).  Courts must therefore determine whether the conduct at issue constitutes management or administration of the plan that may give rise to a fiduciary obligation, or whether it involves a settlor function or merely a business decision that has an effect on an ERISA plan but is not subject to fiduciary standards.  *Hunter*, 220 F.3d at 718.

Although the definition of a fiduciary includes persons who "exercise any discretionary authority or discretionary control respecting management [a] plan," 29 U.S.C. § 1002(21)(A), the exercise of discretion alone does not make an employer's action subject to fiduciary standards.  The exercise of discretion must relate to plan management or administration.  *Hunter*, 220 F.3d at 718.  Basic employer decisions regarding whether to establish, how to design, and whether to amend an ERISA plan are not considered fiduciary functions.  *McCath v. Auto-Body North Shore, Inc.*, 7 F.3d 665, 670 (7th Cir. 1993).  When employers undertake these types of

discretionary actions, they do not act as fiduciaries but instead are analogous to settlors of a trust. *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996).  Even if an employer implements a business decision that may ultimately affect the security of employees' benefits, the action is not automatically subject to a fiduciary duty under ERISA.  *Hunter*, 220 F.3d at 718.  ERISA is concerned with the elements of the plan and its administration *after* it has been established, and only discretionary acts of plan management or administration or those acts designed to carry out the very purposes of the plan are subject to ERISA's fiduciary duties.  *Musto v. Am. Gen. Corp.*, 861 F.2d 897, 911 (6th Cir. 1988)(emphasis added); *Akers v. Palmer*, 71 F.3d 226, 230 (6th Cir. 1995).

### A.  No Dismissal of Adequate Security Claim under *Iqbal* Standard

Kirk argues in its motion to dismiss that the cross-plaintiffs have failed to allege sufficient facts to support a claim for breach of fiduciary duty based on inadequate security because they have failed to allege any facts showing that the obligation to provide adequate security was a fiduciary function as opposed to a settlor function.  This argument is not persuasive.  Kirk is the named fiduciary under the 2002 amendment to the plan so there is no doubt that it is a fiduciary under § 409 of ERISA for many purposes.  Fourth Am. to Kirk ESOP, § 17.2.  The only question is whether Kirk owed a fiduciary duty to provide adequate security under the put option or whether that was a settlor function.  Both cross-claims allege sufficient facts to support this claim.  They refer to the plan itself as well as the relevant statutory provisions regarding fiduciary duty and adequate security, which will be central to the determination of which hat Kirk was wearing when it failed to increase the amount of the letter

of credit as Group B participants exercised their put options.  The cross-claims contain sufficient factual allegations to satisfy *Iqbal*.

### B. Failure to Allege Injury to Plan

Kirk also argues that the cross-plaintiffs cannot state a claim for breach of fiduciary duty under § 502(a)(2) of ERISA because only losses to the plan may be recovered under § 502(a) and the cross-plaintiffs did not and cannot allege losses to the plan resulting from Kirk's failure to provide adequate security.  Kirk is correct that only losses to the plan are actionable under § 502(a)(2) of ERISA.  Section 502(a) provides plan participants with three potential causes of action to enforce their rights under a plan.  First, § 502(a)(1) permits a plan participant to recover benefits due to him under the terms of a plan and to enforce his rights under the terms of a plan. 29 U.S.C. § 1132(a)(1)(B).  Second, § 502(a)(2) permits a plan participant to seek "appropriate relief under § 409," the provision discussed above that governs the liability of a fiduciary under ERISA.  29 U.S.C. § 1132(a)(2).  Finally, § 502(a)(3) permits a plan participant to seek to enjoin any act or practice that violates ERISA or the terms of a plan or "to obtain other appropriate equitable relief" with respect to any such act or practice.  29 U.S.C. § 1132(a)(3).

Section 502(a)(2) authorizes only a claim to enforce § 409.  Section 409 provides that a plan fiduciary can be held "personally liable to make good *to such plan* any losses *to the plan* resulting from each such breach and to restore *to such plan* any losses *to the plan* resulting from each such breach, ..."  29 U.S.C. § 1109(a) (emphasis added).  The Supreme Court has twice held that the language in § 409 limiting a fiduciary's liability to losses to a plan limits actions under §502(a)(2) to claims for losses to a plan.  In *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 (1985), the court held that a fiduciary was not liable under § 502(a)(2) for a

9

delay in processing benefit claims because the plaintiff had received all the benefits to which she was entitled under the plan and was seeking consequential damages for the delay in receiving those benefits. The court reasoned that Congress carefully crafted the remedies available to participants in § 502 and that this claim for extra-contractual damages did not fall within the remedies provided by Congress. In discussing § 502(a)(2), the court stated that a fair reading of the statute makes it "abundantly clear that is draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary." *Russell*, 473 U.S. at 142.

The court later clarified in *LaRue v. DeWolff, Boberg & Assoc., Inc.,* 552 U.S. 248, 254 (2008), that the language in *Russell* regarding protecting the "entire" plan did not mean that a plaintiff had to allege a loss that affected the entire plan (i.e., every participant in the plan). The *LaRue* Court held that a loss to an individual's account under a defined benefit plan is a loss to the plan for purposes of § 409 and § 502(a)(2). The court reaffirmed, however, that § 502(a)(2) provides a remedy only for losses to the plan, whether incurred by the plan as a whole or within individual accounts under a plan, not for individual injuries distinct from plan injuries. *Id.* at 256. *See also Rogers v. Baxter Int'l, Inc.*, 521 F.3d 702 (7th Cir. 2008) (*LaRue* permits action under § 502(a)(2) when a participant in defined-contribution account suffers a loss even though not all participants in a plan are injured); *Harzewski v. Guidant Corp.*, 489 F.2d 799 (7th Cir. 2007) (former employees who had participated in a defined benefit plan could sue under § 502(a)(2) for breach of fiduciary duty to recover monetary losses sustained in their individual accounts because of the breach).

Kirk argues that the cross-plaintiffs cannot state a claim for breach of fiduciary duty under § 502(a)(2) because they cannot allege any loss to the plan from Kirk's failure to increase the amount of the letter of credit or provide other security for the put option installment notes. Kirk is correct. The cross-plaintiffs acknowledge that they were issued the stock to which they were entitled under the plan. The crux of their claim is that Kirk did not comply with the "adequate security" requirement for the put option that came into play only after they received the distribution of stock from the ESOP trust. Kirk's failure to provide adequate security caused no harm to the plan (or the trust that held stock for distribution under the plan). That failure impacted only the participants individually after they received their stock distributions from the plan. The cross-plaintiffs therefore cannot allege an injury to the plan caused by the failure to provide adequate security that is required to state a claim for breach of fiduciary duty under § 502(a)(2).

Kirk argues that the consequence of this conclusion is that the claim for breach of fiduciary duty based on the failure to provide adequate security must be dismissed under Rule 12(b)(6) because the only possible statutory basis for this claim is § 502(a)(2). This is not necessarily correct. As noted above, § 502(a) provides three possible causes of action to plan participants for violations of the terms of a plan. The first is a claim for benefits or to enforce the terms of a plan under § 502(a)(1)(B). Kirk argues that plaintiffs do not have a viable claim under this provision because they got all the benefits to which they were entitled under the plan. While the cross-plaintiffs may have gotten all the stock to which they were entitled from the ESOP trust that held the stock, the plan also required Kirk to provide adequate security if it chose to make installment payments under the put option. This is clearly an obligation that Kirk

11

owed under the plan, whether it involves a fiduciary duty or not, so the cross-plaintiffs may have a viable claim to enforce their rights under the plan under § 502(a)(1)(B).

The other cause of action that could potentially be available to the cross-plaintiffs is under § 502(a)(3). The Supreme Court has held that this provision may be available to plan participants who allege a breach of fiduciary duty and who have suffered an individual injury even though there was no loss to the plan. *Varity Corp. v. Howe*, 516 U.S. 489 (1996). Thus, plan participants like the cross-plaintiffs who cannot allege a loss to the plan can potentially assert a claim under § 502(a)(3) for equitable relief. The *Varity* court cautioned, however, that § 502(a)(3) authorizes only "appropriate equitable relief," and that where Congress provided adequate relief for a participant's injury elsewhere in § 502, "there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'" *Id*. at 515. Thus, to the extent a participant is afforded a remedy under § 502(a)(1) or (a)(2), no other relief would generally be "appropriate" under (a)(3). *Id.* In addition, a plan participant may not obtain damages under § 502(a)(3); only equitable relief is available. *See, e.g., Mertens v. Hewett Assoc.*, 113 U.S. 2063 (1993) (no damages available against third parties for assisting in a breach of fiduciary duty); *Bowerman v. Wal-Mart Stores, Inc.*, 226 F.3d 574, 591-92 (7th Cir. 2000) (*Mertens* limited "appropriate equitable relief" under § 502(a)(3) to traditional equitable remedies such as injunction or restitution); *Clair v. Harris Trust and Sav. Bank*, 190 F.3d 495 (7th Cir. 1999) (only traditional equitable remedies available under § 502(a)(3)); *Health Cost Controls of Illinois v. Washington*, 187 F.3d 703 (7th Cir. 1999) (same). Thus, there are significant limitations on an action for breach of fiduciary duty under § 502(a)(3) but it is

possible to obtain equitable relief under this provision if relief is not available under other provisions of § 502.

In this case, neither group of cross-plaintiffs has expressly identified the subsection of §502(a) upon which it bases its claim. Kirk assumed in its motion to dismiss that both groups of cross-plaintiffs were proceeding under § 502(a)(2) and the cross-plaintiffs never contested that assumption. Neither cross-claim mentions § 502 at all let alone identifies a particular subsection as the basis for the claim. Neither group of cross-plaintiffs recognized in their responses to the motion the difference between the three types of claims available to plan participants under § 502 and they cited cases decided under all three provisions without discussing the distinctions between the provisions. The cross-complaints allege only claims for breach of fiduciary duty, not a claim for benefits or to enforce the plan under § 502(a)(1).[1] The cross-plaintiffs do not seek equitable relief but instead seek damages so they have not stated a claim under § 502(a)(3). The court therefore assumes that the cross-claims are based on § 502(a)(2). These claims are not viable because the cross-plaintiffs cannot allege a loss to the plan resulting from Kirk's failure to provide adequate security. The claims of both groups of cross-plaintiffs for breach of fiduciary duty based on the failure to provide adequate security must therefore be dismissed for failure to state a claim.[2]

---

[1] The cross-plaintiffs may not have alleged a claim to enforce their rights under the plan under § 502(a)(1) because there is virtually no chance that such a claim would be paid by the bankruptcy estate in light of the lack of assets, while insurance may be available to pay claims for breach of fiduciary duty.

[2] In light of this conclusion, the court need not address whether the obligation to provide adequate security was a fiduciary function or a settlor function.

## C. Breach of Fiduciary Duty Based on Purchase Price of Group B's Stock

Group A's cross claim also alleges that Kirk breached its fiduciary duty under ERISA by buying back Group B's stock at a price higher than its fair market value. Kirk argues that the cross-plaintiffs have failed to allege sufficient facts to support this claim. The court agrees. The Group A cross-plaintiffs allege only that the debtor (and the Board of Trustees, who are not parties to this case) breached the fiduciary duties owed to Group A participants "because the stock of the Debtor that was purchased ...[from Group B]... was for more than its fair market value." Cross-claim Par. 34 (Docket No. 93). Group A cites § 409(h)(1)(B) of the Internal Revenue Code, 26 U.S.C. § 409(h)(1)(B), and Section 15.2 of the ESOP for the definition of fair market value. Section 409 of the IRC provides that a plan meets the requirements of the subsection with respect to a put option if the participant has a right to require that the employer repurchase the securities under a fair valuation formula. Section 15.2 of the plan states that the put option permits the participant to sell the company stock back to Kirk at any time for the then fair market value. Section 2.21 of the plan provides that the fair market value shall be based upon a valuation by an independent appraiser.

Group A alleges no facts to support its contention that Group B participants were paid more than the fair market value for the stock. There are no allegations about the price that the members of Group B were paid for their shares, whether any independent appraisal was obtained by Kirk, or the price that Group A contends was the fair market value at the time that each Group B participant exercised the put option. Group A's conclusory allegations are insufficient to present a plausible basis for recovery with respect to this claim. Group A's claim for a breach of

fiduciary duty against Kirk for allegedly paying more than fair market value for Group B's stock must therefore be dismissed.

## V.     Conclusion

Kirk's motion to dismiss is granted.

Dated:   September 3, 2010

ENTERED:

Carol A. Doyle
United States Bankruptcy Judge